United States District Court
For the Northern District of California

1

2

3

4          IN THE UNITED STATES DISTRICT COURT

5        FOR THE NORTHERN DISTRICT OF CALIFORNIA

6  KEVIN L. HOPKINS,                    No. C 09-0722 CW (PR)

7          Plaintiff,                   ORDER DENYING PLAINTIFF'S
                                        MOTION TO COMPEL DISCOVERY AND
8     v.                                STAY SUMMARY JUDGMENT; GRANTING
                                        DEFENDANTS' MOTION FOR SUMMARY
9  OAKLAND POLICE DEPARTMENT,           JUDGMENT
   OAKLAND POLICE OFFICER
10 WILLIAM BERGERON,                    (Docket nos. 30 & 53)

11         Defendants.

12 _____/

13                              INTRODUCTION

14     Plaintiff Kevin L. Hopkins, a state prisoner currently

15 incarcerated at the West County Detention Facility in Richmond,

16 California, brought this pro se civil rights action pursuant to 42

17 U.S.C. § 1983 alleging that, in 2007, several members of the

18 Oakland Police Department (OPD) violated his First Amendment right

19 of access to the courts by retaliating against him for successfully

20 settling, in 2006, a prior action he brought against the OPD, OPD

21 Police Chief Richard Word, and OPD officers I. Padilla and B. Ko

22 for misconduct.[1]

23     The Court conducted an initial screening of the present

24 complaint pursuant to 28 U.S.C. § 1915A(a) and found cognizable

25 Plaintiff's retaliation claim against OPD Officer William Bergeron.

26 Additionally, the Court dismissed Plaintiff's retaliation claims

27

28     [1]See Hopkins v. Oakland Police Dep't Officers, et al,
   No. C 01-04972 (CW) (PR).

United States District Court
For the Northern District of California

against several unnamed OPD officers, explaining to Plaintiff that he could file a motion to amend the complaint should he learn the identities of those officers. Plaintiff has not done so.

Now pending before the Court is the motion for summary judgment filed by Defendant Bergeron and Defendant City of Oakland, the municipal entity that encompasses the OPD.[2] Plaintiff has opposed the motion and Defendants have filed a reply. Also pending is Plaintiff's motion to compel discovery and stay summary judgment.

For the reasons discussed below, the Court DENIES Plaintiff's motions, and GRANTS the motion for summary judgment.

BACKGROUND

I.   Plaintiff's Facts

The following facts are derived from the allegations in Plaintiff's verified complaint (docket no. 1) and Plaintiff's verified declaration filed in support of his opposition to the motion for summary judgment (docket no. 54).

On August 17, 2007, Plaintiff was driving in Oakland and came to a stop at a red flashing light at 27th and Market streets.[3] While stopped, to his left he noticed a marked police car at a

_____

[2]When screening the complaint, the Court did not discuss whether the complaint stated a claim against the OPD, and the OPD was not ordered served with the complaint. Nevertheless, the City of Oakland has answered the complaint and joins in the motion for summary judgment.

[3]In his complaint, Plaintiff states the date was August 18, 2007, while in his declaration in support of his opposition to the motion for summary judgment he states the date was August 17, 2007. The latter date is the same date identified by Bergeron in his declaration and exhibits in support of the motion for summary judgment. Accordingly, as there appears to be no dispute that August 17, 2007 is the relevant date herein, the Court uses that date.

complete stop.  Plaintiff waited for the police car, which had the right of way, to proceed; when it did not, Plaintiff made a right turn.

Once Plaintiff's right turn was completed, the police car turned on its red flashing lights.  Plaintiff pulled over to his right, coming to a complete stop.  Two officers exited from the police car with their revolvers drawn.  Bergeron approached the car and asked Plaintiff if he had his driver's license.  Plaintiff responded that he did not, and told Bergeron his date of birth, license number and name.

Bergeron then asked Plaintiff, "How did you buy this brand new car by lying on good police officers?" and said, "[Y]our lying black ass is going back to prison."  Bergeron made these statements to Plaintiff before Bergeron searched Plaintiff's car.

Bergeron next opened the trunk of the car, which was filled with cooking utensils.  The utensils had been placed there when Plaintiff's family member borrowed the car.  Plaintiff was unaware that the utensils had been left in the trunk.

Plaintiff did not have drugs on his person or in his car. However, Bergeron planted drugs in the car, which resulted in Plaintiff's being charged with possession of crack cocaine.  The charges were later dismissed.

II.  Defendant Bergeron's Facts

The following facts are derived from Bergeron's declaration and supporting exhibits (docket nos. 31, 32).[4]

_____

[4]The Court GRANTS Bergeron's Request for Judicial Notice of the public records of the criminal complaint filed against Plaintiff in Alameda County Superior Court on August 20, 2007, and the Clerk's Dockets in that case dated August 27, 2007 and December 20, 2007.

United States District Court
For the Northern District of California

On August 17, 2007, at approximately 8:00 a.m., Bergeron and his partner Officer Vallimont were on patrol in the area of 27th and Market Streets in Oakland. Bergeron was driving eastbound on 26th Street at Market Street. He noticed a green Toyota Corolla approaching the intersection of 27th and Market traveling northbound on Market. The intersection was clearly marked for northbound, southbound, eastbound and westbound traffic.

The traffic light governing northbound traffic on Market Street was red. The traffic signal was green for eastbound traffic. Bergeron observed the Corolla slow to approximately five miles per hour and turn eastbound on 27th, failing to come to a complete stop before making the turn on red.

As Bergeron entered the intersection (eastbound 26th Street at Market), the driver of the Corolla, later identified as Plaintiff, began to turn in front of Bergeron's vehicle and Bergeron had to quickly brake to avoid a collision with him.

Bergeron noted that the Corolla had no rear license plate. At that point, Bergeron conducted a traffic stop for making a right turn on red, failing to yield to a vehicle with the right of way and failing to have two license plates as required.

When Bergeron requested Plaintiff's driver's license, Plaintiff informed Bergeron that he did not have one. Instead, Plaintiff identified himself using a California Department of Corrections and Rehabilitation (CDCR) identification card and informed Bergeron that he was on parole.

Bergeron then conducted a parole search of Plaintiff and the vehicle. During the search, Bergeron recovered from the driver's side floorboard a folded one dollar bill containing suspected rock

4

cocaine.  He also recovered from the spare tire compartment a large knife and a piece of paper with Plaintiff's name on it.

Plaintiff was arrested for possession of narcotics and violation of parole.  Bergeron's superior officer, Sgt. Ferguson, responded and approved the arrest.  Additionally, Plaintiff's right front passenger, Williams, was arrested on a parole warrant.

Bergeron was not aware that Plaintiff had been involved in a prior lawsuit against the City of Oakland, and did not discuss any lawsuits with him.

On August 20, 2007, the Alameda County District Attorney's Office filed a criminal complaint against Plaintiff for felony possession of a controlled substance in violation of Health and Safety Code Section 11350(a).  On December 20, 2007, the trial court granted the District Attorney's motion to dismiss the case in the interest of justice, and Plaintiff was released as to that action only.

DISCUSSION

I.   Plaintiff's Motion to Compel and to Stay Summary Judgment

On February 8, 2011, approximately two months after Bergeron filed his motion for summary judgment, Plaintiff moved for an extension of time to file opposition to Bergeron's motion and to stay Bergeron's motion on the ground Plaintiff had not had adequate opportunity to engage in discovery to oppose Bergeron's motion. The Court granted Plaintiff's request for an extension of time to oppose the motion for summary judgment, but denied Plaintiff's request for a stay, ruling as follows:

> Plaintiff states he has been hindered in his ability to oppose Defendant's motion because he did not receive said motion until January 20, 2011, he has limited law library access and he needs to engage in discovery in

United States District Court
For the Northern District of California

order to find witnesses who viewed Defendant's alleged retaliatory acts against Plaintiff.

Rule 56(d) of the Federal Rules of Civil Procedure provides a procedure by which a party may avoid summary judgment when such party has not had sufficient opportunity to discover affirmative evidence necessary to oppose the motion.  See Garrett v. San Francisco, 818 F. 2d 1515, 1518 (9th Cir. 1987).  In particular, Rule 56(d) provides that a court may deny a summary judgment motion and permit the opposing party to conduct discovery where it appears that the opposing party, in the absence of such discovery, is unable to present facts essential to opposing the motion.  Fed. R. Civ. P. 56(d).

Here, the Court finds a stay of Defendant's motion for summary judgment to allow Plaintiff to engage in further discovery prior to filing his opposition is unwarranted.  The Court ordered service of the complaint on Defendant more than one year ago and, in so doing, informed the parties that they could engage in discovery. Further, Plaintiff received Defendant's summary judgment motion more than five months ago.  Plaintiff has provided no compelling reason why he has not completed discovery heretofore and requires additional time to do so. Moreover, Defendant has moved for summary judgment on grounds of qualified immunity. Under well-established precedent, a district court should stay discovery until the threshold question of qualified immunity is settled. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Dimartini v. Ferrin, 889 F.2d 922, 926 (9th Cir. 1989). Accordingly, Plaintiff's motion to stay Defendant's motion for summary judgment is DENIED.

Order, dated July 12, 2011, at 3:11-4:20.

Thereafter, Plaintiff filed a motion to compel discovery and renewed his request to stay Bergeron's motion for summary judgment. In his motion, Plaintiff asserts that he requested discovery from Bergeron in January and February of 2011 concerning documentation of racially-biased statements allegedly made by Bergeron to African-Americans and other evidence generally supporting Plaintiff's claims, but Bergeron objected to providing such discovery.  Plaintiff has not provided the Court with copies of his discovery requests to Bergeron, Bergeron's responses thereto, or evidence of any attempt by Plaintiff to meet and confer with

Bergeron prior to filing the instant motion.

The Court finds Plaintiff's motion without merit.  First, no issue of racial bias on the part of Bergeron was asserted in Plaintiff's complaint.  Rather, Plaintiff alleged only retaliation by Bergeron, and speculates for the first time in his opposition papers that Bergeron's actions might have been racially motivated. As Bergeron never was put on notice in the complaint that he was being charged with racial bias, the Court finds Plaintiff's discovery requests concerning the same are not relevant to the instant proceedings.

Second, Plaintiff has failed to show that he is entitled to discovery with respect to his general assertion that Bergeron did not respond to Plaintiff's discovery requests concerning the instant claim against Bergeron.  Specifically, as noted, Plaintiff has not provided the Court with copies of his discovery requests to Bergeron and Bergeron's objections thereto, and he has not verified that he attempted to meet and confer with Bergeron prior to filing the instant motion, as is required by Rule 37(a)(1) of the Federal Rules of Civil Procedure and  Civil Local Rule 37-1.

Accordingly, Plaintiff's motion to compel is DENIED.

Additionally, Plaintiff's renewed request for a stay of Bergeron's summary judgment motion is DENIED for the reasons set forth in the Court's Order of July 12, 2011 denying Plaintiff's previous request for such a stay.

II.  Defendant Bergeron's Motion for Summary Judgment

A.   Standard of Review

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the

United States District Court
For the Northern District of California

evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  The burden then shifts to the opposing party to produce "specific evidence,

through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

B.    Evidence Considered

A district court may consider only admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

Plaintiff's complaint is verified, as is his declaration filed in support of his opposition. Accordingly, these documents may be used as opposing affidavits to Bergeron's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Schroeder, 55 F.3d at 460 & nn.10-11. Bergeron, however, objects to the admissibility of certain statements made by Plaintiff in his declaration.

First, Bergeron objects that Plaintiff's testimony, at ¶¶ 12-14 of Plaintiff's declaration, that Plaintiff was a target of "unprovoked pull over stops," body-cavity searches and other allegedly unlawful acts by unidentified OPD officers on unspecified dates and not involving Bergeron is irrelevant to whether Bergeron violated Plaintiff's First Amendment rights with respect to the events at issue in the present action because the Court previously dismissed all of Plaintiff's claims against unnamed Defendants.

Second, Bergeron objects that Plaintiff's testimony, at ¶¶ 15-16, 20 of Plaintiff's declaration, that the CDCR Department of Internal Affairs denied Plaintiff's request for information concerning the actions of unnamed OPD officers described above also

United States District Court
For the Northern District of California

is irrelevant, is hearsay and lacks foundation.

Plaintiff has not responded to Bergeron's objections.

The Court agrees that the above statements are not relevant to the instant proceedings.  Accordingly, they will not be considered as evidence in opposition to Bergeron's motion for summary judgment.

C.   Plaintiff's Claim

Plaintiff claims that Bergeron arrested Plaintiff in retaliation for Plaintiff's prior successful lawsuit against the OPD, OPD Police Chief Word, and OPD officers Ko and Padilla.

Bergeron asserts that he is entitled to summary judgment on Plaintiff's retaliation claims because (1) there is no evidence that is sufficient to create a material issue of fact as to whether Bergeron's conduct was motivated by a desire to retaliate against Plaintiff for exercising his First Amendment rights, i.e., Plaintiff's successful lawsuit, and (2) he is entitled to qualified immunity.

To demonstrate retaliation in violation of the First Amendment, a plaintiff must ultimately prove first that the defendant took action that would chill or silence a person of ordinary firmness from future First Amendment activities.  Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 901 (9th Cir. 2008) (internal citation and quotation omitted).  Second, the plaintiff must ultimately prove that the defendant's desire to cause the chilling effect was a but-for cause of the defendant's actions.  Id.

A plaintiff who alleges his arrest was retaliatory, but does

United States District Court
For the Northern District of California

1  not claim retaliatory prosecution, is not required to plead and

2  prove the absence of probable cause in order to state a claim for

3  retaliation.  See id. (discussing Hartman v. Moore, 547 U.S. 250

4  (2006), and Skoog v. County of Clackamas, 469 F.3d 1221 (9th Cir.

5  2006)).[5]  Nevertheless, the existence of probable cause to support

6  the arrest "'has high probative force'" when considering whether

7  the defendant's actions were retaliatory.  Dietrich, 548 F.3d at

8  901 (quoting Hartman, 547 U.S. at 265)).

9          1.    The Initial Traffic Stop

10      Plaintiff claims that Bergeron's initial stop of Plaintiff's

11  car was retaliatory because, contrary to Bergeron's assertions,

12  Plaintiff did not fail to stop at the red light before turning.  He

13  argues, but presents no evidence, that he had dealer plates on his

14  car.

15      Whether Plaintiff did or did not stop at the red light is a

16  disputed fact that cannot be decided on summary judgment.  However,

17  this fact is not material to deciding the present motion.  Even if

18  the Court assumes that Plaintiff did stop at the red light, he has

19  failed to raise a reasonable inference that Bergeron's stop of

20  Plaintiff was retaliatory.

21      First, Plaintiff presents no admissible evidence to call into

22  question Bergeron's evidence that Plaintiff did not have a rear

23  license plate, in violation of California Vehicle Code Section

24  _____

25      [5]Here, Plaintiff's parole was revoked but he was not
    prosecuted for a criminal offense.  Accordingly, the Court finds
26  this case should be analyzed as one for retaliatory arrest rather
    than retaliatory prosecution.  Consequently, Plaintiff is not
27  required to plead and prove the absence of probable cause in order
    to show that Bergeron's actions were retaliatory.  See Skoog, 469
28  F.3d at 1234.

United States District Court
For the Northern District of California

5200, which states in part: "When two license plates are issued by
the department for use upon a vehicle, they shall be attached to
the vehicle for which they were issued, one in the front and the
other in the rear."  Cal. Veh. Code § 5200(a).  Instead, the only
statement Plaintiff makes in reference to Bergeron's evidence is
the following: "Plaintiff did not commit traffic violation as
alleged.  Plaintiff did not have license plates for the vehicle
still had dealer plates for the car was a 2007."  Opp'n at 2:13-15.

Plaintiff's statement fails to create a material issue of
fact, however, because the statement is made in Plaintiff's
unverified opposition papers, not in his declaration, and, as such,
has no evidentiary value.  Further, even if the statement is
considered and all reasonable inferences are drawn in Plaintiff's
favor, the statement does not call into question Bergeron's
evidence that Plaintiff: (1) did not have a rear license plate,
(2) did not present evidence to Bergeron that showed he possessed
dealer plates, and (3) did not present other evidence to Bergeron,
such as a copy of the report of sale, that showed he was permitted
to operate the car without license plates because it was newly
purchased.  See Cal. Veh. Code § 4456(c)(1)-(2) ("A vehicle
displaying a copy of the report of sale may be operated without
license plates or registration card until either of the following,
whichever occurs first: (1) The license plates and registration
card are received by the purchaser. (2) A six-month period,
commencing with the date of sale of the vehicle, has expired.").

Second, Plaintiff's causation argument fails with respect to
the initial stop because Plaintiff states in his declaration that
Bergeron learned Plaintiff's identity only after Bergeron

United States District Court
For the Northern District of California

approached the car and asked Plaintiff for identification, at which

point Plaintiff told Bergeron his name and that he was on parole.

See Pl.'s Dec. Supp. Opp'n ¶ 9.; see also Opp'n at 7:19 ("Upon

defendant accosting plaintiff he discovered who plaintiff was

 . . . ."). Consequently, because there is no probative evidence

to show that Bergeron knew Plaintiff's identity prior to pulling

Plaintiff's car over, Plaintiff has failed to create a material

issue of fact with respect to whether Bergeron acted with a

retaliatory motive in so doing.[6]

          2.    The Search and Plaintiff's Arrest

     Plaintiff claims that Bergeron's search of Plaintiff's car and

Plaintiff's subsequent arrest were retaliatory because, after

learning Plaintiff's identity but before conducting the search,

Bergeron asked Plaintiff, "How did you buy this brand new car by

lying on good officers?" and said, "[Y]our lying black ass is going

back to prison."  Pl.'s Dec. Supp. Opp'n ¶ 19.

     Even if Bergeron's initial statement about Plaintiff's "lying

on good officers" raises an inference that Bergeron knew about

Plaintiff's prior litigation, the undisputed evidence shows that

when Bergeron made his second statement, i.e., that Plaintiff would

be going back to prison, Bergeron already knew that Plaintiff was a

parolee driving without a license who had committed at least one

traffic violation.  Based on such facts, Bergeron reasonably could

infer that Plaintiff would be returned to prison as a parole

violator.  See Cal. Code Regs. tit. 15, § 2512(a) (providing that

_____

     [6]In his opposition, Plaintiff theorizes for the first time
that Bergeron's decision to pull Plaintiff over may have been
"racially motivated."  Opp'n at 7:18.  This argument is purely
speculative and unsupported and was not raised in the complaint.
Accordingly, it will not be considered by the Court.

United States District Court
For the Northern District of California

1    general conditions of parole are applicable to all parolees and
2    violation of such conditions "may result in the revocation of
3    parole and the parolee's return to prison"), id. § 2512(a)(4)
4    (general conditions of parole require that the parolee "shall not
5    engage in criminal conduct").

6        Further, although Plaintiff maintains that Bergeron did not
7    have probable cause to search Plaintiff's car and arrest him,
8    probable cause is not required for the search of a parolee.  See
9    Samson v. California 547 U.S. 843, 851-856 (2006) (finding that
10   suspicionless search of parolee, conducted under the authority of a
11   California statute requiring that every prisoner eligible for
12   release on state parole "shall agree in writing to be subject to
13   search or seizure by a parole officer or other peace officer at any
14   time of the day or night, with or without a search warrant and with
15   or without cause" did not violate the Fourth Amendment).

16       Moreover, Plaintiff does not dispute Bergeron's evidence that
17   a "large" knife with a blade approximately eight inches long was
18   found in the trunk of Plaintiff's car, see Bergeron Dec. ¶ 3 & Ex.
19   A, Crime Report, at 4, which is a per se violation of parole.  See
20   Cal. Code Regs., tit. 15, § 2512(a)(6) (general conditions of
21   parole require that a parolee "not own, use, have access to, or
22   have under [his] control . . . any knife with a blade longer than
23   two inches, except kitchen knives which must be kept in [his]
24   residence and knives related to [his] employment which may be used
25   and carried only in connection with [his] employment . . . .").

26       Finally, Plaintiff maintains that Bergeron planted the cocaine
27   that led to Plaintiff's being charged with a violation of
28   California Health and Safety Code section 11350(a).  Plaintiff,

14

United States District Court
For the Northern District of California

however, has presented no evidence to substantiate this conclusory
assertion other than his statement that the cocaine was not his.
Specifically, he has presented no evidence to show, for example,
that the cocaine had not been put in the car by either his
passenger or the family member who had borrowed Plaintiff's car
previously.  In sum, the fact that Plaintiff might not have put the
cocaine in the car or been aware of its presence does not raise a
reasonable inference that it was planted in the car by Bergeron.

Based on the above, the Court concludes that Plaintiff has
failed to raise a triable issue of material fact with respect to
whether retaliation was a but-for cause of Bergeron's stop, search
and arrest of Plaintiff.  Accordingly, the Court GRANTS Bergeron's
motion for summary judgment.

    D.   Qualified Immunity

Bergeron claims that summary judgment is proper in this case
also because he is entitled to qualified immunity from liability
for civil damages.  The defense of qualified immunity protects
"government officials . . . from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
The threshold question in qualified immunity analysis is: "Taken in
the light most favorable to the party asserting the injury, do the
facts alleged show the officer's conduct violated a constitutional
right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).

A court considering a claim of qualified immunity must
determine whether the plaintiff has alleged the deprivation of an
actual constitutional right and whether such right was "clearly

15

United States District Court
For the Northern District of California

1    established."  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808,

2    818 (2009).  The relevant, dispositive inquiry in determining

3    whether a right is clearly established is whether it would be clear

4    to a reasonable officer that his conduct was unlawful in the

5    situation he confronted.  Saucier, 533 U.S. at 201-202.

6         Here, the Court has found no evidence that Bergeron's actions

7    rose to the level of a constitutional violation.  However, assuming

8    that Plaintiff was deprived of a constitutional right, the Court

9    next considers whether Bergeron's conduct was clearly unlawful.

10        Plaintiff alleges that Bergeron searched and arrested him in

11   retaliation for Plaintiff's successful prior lawsuit.[7]  For the

12   reasons discussed below, the Court concludes that Plaintiff's

13   constitutional rights in such regard were not clearly established

14   at the time of the incident in this case.

15        In April 2006, the United States Supreme Court, in Hartman v.

16   Moore, 547 U.S. 250 (2006), held that the absence of probable cause

17   is an element that plaintiffs are required to prove in First

18   Amendment retaliatory prosecution cases.  In November 2006,

19   approximately nine months before the incident in the present case,

20   the Ninth Circuit described the Supreme Court's decision in Hartman

21   as limited to a "particular subcategory of retaliation claims:

22   retaliatory prosecution claims."  Skoog v. County of Clackamas, 469

23   F.3d 1221, 1233 (9th Cir. 2006).  Unlike Hartman, Skoog did not

24   involve a retaliatory prosecution but, instead, involved a

25   retaliatory citation that had been issued to the plaintiff,

26   _____

27        [7]As Plaintiff has conceded that Bergeron did not know
     Plaintiff's identity prior to asking for Plaintiff's driver's
28   license, Plaintiff's retaliation claim hinges upon the events that
     occurred once Bergeron learned who Plaintiff was.

allegedly due to the exercise of First Amendment rights.
Distinguishing <u>Hartman</u> from <u>Skoog</u> on this ground, the Ninth Circuit
held that, "failure to plead and prove probable cause is not
dispositive with regard to ordinary retaliation claims." <u>Id.</u> at
1234.

In <u>Skoog</u>, the Ninth Circuit found both strong evidence of
retaliatory motive on the part of the defendant and probable cause
for the defendant's actions.  The court, defining the
constitutional right at issue as "the right of an individual to be
free of police action motivated by retaliatory animus but for which
there was probable cause," concluded that the defendant was
entitled to qualified immunity:

> At the time of the search, the right we have just
> defined was far from clearly established in this Circuit
> or in the nation.  We have decided only today that a
> right exists to be free of police action for which
> retaliation is a but-for cause even if probable cause
> exists for that action.  At some future point, this right
> will become clearly established in this Circuit.  At the
> time [the officer] acted, however, the law was far from
> clear.  Accordingly, even assuming [the officer]'s
> primary motivation for seizing Skoog's still camera was
> to retaliate for Skoog's exercise of his First Amendment
> rights, he violated no clearly established law because
> probable cause existed for the search.  [The officer] is
> thus entitled to qualified immunity under the second
> prong of our qualified immunity analysis.

469 F.3d at 1235 (internal footnotes omitted).

Thereafter, in May 2008, the Ninth Circuit noted, in contrast
to its statement in <u>Skoog</u>, that <u>Hartman</u> applies equally to First
Amendment retaliatory arrest and retaliatory prosecution cases.
<u>See</u> <u>Beck v. City of Upland</u>, 527 F.3d 853, 864 (9th Cir. 2008).
Subsequently, in December 2008, the Ninth Circuit, in <u>Dietrich v.
Ascuaga's Gold Nugget</u>, 548 F.3d 892 (9th Cir. 2008), clarified that
the <u>Hartman</u> standard applies only to retaliatory prosecution cases,

United States District Court
For the Northern District of California

but emphasized that the existence of probable cause has "high probative force" even in "ordinary" retaliation cases not involving a criminal prosecution.  Id. at 901.

In the present case, the facts are more like those in Skoog than in Hartman, because Plaintiff was not criminally prosecuted. Moreover, in contrast to both Skoog and Hartman, Bergeron's search of Plaintiff's car and his arrest of Plaintiff did not require probable cause because Plaintiff was a parolee.

It is undisputed that Bergeron did not know Plaintiff's identity before speaking with Plaintiff, and that when Plaintiff told Bergeron his name he also informed Bergeron that he was driving without a license and was on parole.  At that point, no probable cause was required for Bergeron to search Plaintiff's car or to arrest Plaintiff upon finding an eight-inch knife in the trunk, a clear violation of parole regulations.

Based on the foregoing, the Court concludes that the law with respect to whether Plaintiff had a right to be free of retaliatory police action, where he was in clear violation of parole and there was no requirement of probable cause for his search and arrest, was not clearly established at the time of the events in the present action.  Consequently, even if Bergeron harbored a retaliatory motive for the search and arrest, it would not have been clear to a reasonable officer in Bergeron's position that his actions were unlawful.  Accordingly, Bergeron is entitled to qualified immunity.

E.   Municipal Liability

As noted, in his complaint Plaintiff alleged that, in 2007, several members of the OPD retaliated against him because of his prior lawsuit.  In the caption of the complaint, Plaintiff

United States District Court
For the Northern District of California

identified as Defendants "Oakland Police Dept., Officer Bergeron, et al." Compl. at 1. In the body of the complaint, which was written on the court's civil rights form, in response to instructions to write the name of each defendant, his or her official position, and his or her place of employment, Plaintiff wrote: "Off. Bergeron Oakland Police Dept. Employed as an Oakland Police Officer." Compl. at 2:26-3:1.

Although the complaint was not ordered served on the OPD, the City of Oakland, as the municipality that encompasses the OPD, has answered the complaint and joins in the motion for summary judgment, arguing that Plaintiff has failed to plead or prove a claim of municipal liability.

In opposition to the motion for summary judgment, Plaintiff again identifies the OPD as a Defendant, but does not respond to the argument that his allegations do not state a claim for municipal liability.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). However, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. See Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that there was a violation of the plaintiff's constitutional rights; (2) "that the municipality had a policy;" (3) that the policy constitutes "deliberate indifference" to the plaintiff's constitutional right;

United States District Court
For the Northern District of California

and (4) that the policy was the reason for the constitutional violation.  <u>Plumeau v. School Dist. No. 40 County of Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997) (internal citations omitted).

Plaintiff has not alleged facts that identify a policy of the OPD that led to the violation of his constitutional rights. Additionally, where, as here, the conduct of individual employees is found reasonable and proper, the municipality or county cannot generally be held liable, because no constitutional violation occurred.  <u>See</u> <u>Orin v. Barclay</u>, 272 F.3d 1207, 1216-17 (9th Cir. 2001) (city not liable for First Amendment infringement when police officers had probable cause to arrest anti-abortion protester for trespass and failure to disperse).

Accordingly, to the extent Plaintiff maintains that the OPD, as a municipal department of the City of Oakland, caused the violation of his constitutional rights, the City of Oakland is entitled to summary judgment.

CONCLUSION

In light of the foregoing, the Court orders as follows:

1.   Plaintiff's motion to compel discovery and stay summary judgment is DENIED (docket no. 53).

2.   Defendants' motion for summary judgment is GRANTED (docket no. 30).

3.   The Clerk of the Court shall enter judgment in favor of all Defendants and close the file.

4.   This Order terminates docket nos. 30 and 53.

IT IS SO ORDERED.

DATED:   9/30/2011

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

KEVIN L. HOPKINS,

        Plaintiff,

  v.

OAKLAND POLICE DEPARTMENT et al,

        Defendant.
_____/

Case Number: CV09-00722 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 30, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kevin L. Hopkins CC11CZ851
West County Detention Facility
5555 Giant Highway
Richmond,  CA 94806

Dated: September 30, 2011

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

21